1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | | |
|---|---|---|
| **NEAL W. SALOMON, M.D.,** an individual, | ) ) ) | |
| Plaintiff, | ) ) | 03:11-cv-01007-HU |
| vs. | ) ) | **FINDINGS AND** |
| **MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,** a Massachusetts corporation; and **TED O. MILLER,** an individual, | ) ) ) ) ) | **RECOMMENDATION** |
| Defendants. | ) | |

—————————————————————

Timothy W. Snider
Peter D. Sax
STOEL RIVES LLP
900 SW 5th Avenue, Suite 2600
Portland, Oregon 97204

     Attorneys for Plaintiff

Christiane R. Fife
Jeffrey D. Hern
SCHWABE WILLIAMSON & WYATT, PC
1211 SW Fifth Avenue
Portland, Oregon 97204

Christopher J. Nye
REED MCCLURE
601 Union Street, Suite 1500
Seattle, WA 98101

     Attorneys for Defendants

FINDINGS AND RECOMMENDATION      1

HUBEL, Magistrate Judge:

## Introduction

This matter comes before the court on plaintiff Neil W. Salomon's (hereinafter "Plaintiff") motion to remand this proceeding to the Circuit Court of the State of Oregon for the County of Multnomah. Defendant Massachusetts Mutual Life Insurance Company ("Mass Mutual") removed this case to federal district court based on diversity of citizenship under 28 U.S.C. § 1332. Mass Mutual concedes that defendant Ted O. Miller ("Miller") is a citizen of the forum state of Oregon, but nevertheless argues that removal was proper based on the fraudulent joinder doctrine. For the reasons set forth below, Plaintiff's motion [8] should be GRANTED. Plaintiff's request for attorney's fees and costs under 28 U.S.C. § 1447(c) should be DENIED.

## Factual and Procedural Background

### I.   Factual Background[1]

In 1981, Plaintiff joined Northwest Surgical Associates ("NW Surgical") in Portland, Oregon as a cardiothoracic surgeon. (Compl. ¶ 4.) Plaintiff resided in Portland from 1981 until 1990. (Compl. ¶ 4.) In 1981, Miller acted as an insurance agent and insurance broker for several doctors at NW Surgical, including Plaintiff. (Compl. ¶ 5.) Miller represented himself to be an expert on insurance products and made recommendations to Plaintiff regarding insurance policies that would protect Plaintiff's economic interests and needs. (Compl. ¶ 5.) While at NW Surgical and

---

[1] Unless otherwise indicated, the following facts are taken from Plaintiff's complaint. (Notice of Removal Ex. 1.)

FINDINGS AND RECOMMENDATION     2

thereafter, Plaintiff purchased several insurance policies from Miller providing different types of insurance coverage. (Compl. ¶ 5.)

In early 1983, Plaintiff requested that Miller procure a disability policy that would provide him with lifetime "own occupation" insurance coverage. (Compl. ¶ 6.) Plaintiff informed Miller he was seeking insurance that would pay him for his lifetime if, by chance, he were unable to continue working as a cardiothoracic surgeon. (Compl. ¶ 6.) Plaintiff, however, wanted the insurance to allow him to continue working in another occupation or profession. (Compl. ¶ 6.) Miller agreed to do so. (Compl. ¶ 6.) At that time, Miller was licensed to sell disability insurance for Unionmutual Stock Life Insurance Company ("UNUM"), and Miller recommended that Plaintiff purchase an "own occupation" disability policy from UNUM, which he represented would afford Plaintiff "own occupation" insurance in the event he were unable to work as a cardiothoracic surgeon. (Compl. ¶ 6.) Miller represented that, in the event Plaintiff was unable to work as a cardiothoracic surgeon, he could obtain all the benefits under the policy for his lifetime and continue working in another job or profession. (Compl. ¶ 6.) In reliance on Miller's recommendation and representations, Plaintiff purchased the "UNUM Policy," which provided disability benefits of $4,000 per month. (Compl. ¶ 6.)

In or around February 1986, June 1986 and October 1988, Plaintiff requested that Miller procure additional disability insurance policies that would afford him lifetime "own occupation" insurance coverage that was identical to the UNUM Policy. (Compl. ¶ 7.) Miller agreed. (Compl. ¶ 7.) At those times, Miller was

FINDINGS AND RECOMMENDATION      3

1  licensed to sell disability insurance for Connecticut Mutual Life
2  Insurance Company[2] ("Conn Mutual"), and Miller recommended that
3  Plaintiff purchase lifetime "own occupation" disability insurance
4  policies from Conn Mutual rather than UNUM. (Compl. ¶ 7.) Miller
5  assured Plaintiff that Conn Mutual's "own occupation" disability
6  policies provided coverage identical to that of the UNUM Policy.
7  (Compl. ¶ 7.) Relying on Miller's recommendation, Plaintiff
8  purchased the following Conn Mutual disability insurance policies:
9  (1) February 17, 1986, Conn Mutual Policy No. 4491147, $4,750 per
10 month; (2) June 3, 1986, Conn Mutual Policy No. 4532139, $1,550 per
11 month; and (3) October 14, 1988, Conn Mutual Policy No. 4815874,
12 $3,000 per month (collectively, the "Conn Mutual Policies").
13 (Compl. ¶ 7.) Plaintiff paid additional premiums in order to
14 purchase lifetime "own occupation" insurance coverage under the
15 Conn Mutual Policies, however, had be been told that the coverage
16 differed from that provided by the UNUM Policy, he would not have
17 made the purchase. (Compl. ¶ 7.) Plaintiff would have instead
18 purchased additional policies from UNUM or another insurance
19 carrier that offered such coverage. (Compl. ¶ 7.)

20     In Fall 1999, at age fifty-four, Plaintiff was forced to stop
21 working as a cardiothoracic surgeon due to severe osteoarthritis in
22 his hand. (Compl. ¶ 8.) Both UNUM and Mass Mutual, as successor-
23 in-interest to the Conn Mutual Policies, determined that Plaintiff
24 was totally disabled within the terms of the UNUM Policy and the
25 Conn Mutual Policies (collectively, "the Insurance Policies"), and

26 ─────────────────────

27     [2]Conn Mutual is Mass Mutual's predecessor-in-interest and was,
   at all material times, authorized to do business in the state of
28 Oregon. (Compl. ¶ 2.)

FINDINGS AND RECOMMENDATION     4

began paying Plaintiff full monthly benefits. (Compl. ¶ 9.) At that time, Plaintiff also contacted Miller and was assured that he could perform non-cardiothoracic surgical work and continue to receive full monthly benefit payments under the Insurance Policies for his lifetime. (Compl. ¶ 10.) Over subsequent years, Miller repeatedly provided Plaintiff with similar assurances. (Compl. ¶ 10.)

Between the time Plaintiff was determined to be totally disabled under the Insurance Policies until September 2010, he performed minimal, part-time consulting work that resulted in lower income than he earned as a cardiothoracic surgeon, and lower income than the value of the full monthly lifetime benefits payments under the Insurance Policies. (Compl. ¶ 12.) Plaintiff only engaged in such consulting activities based on Miller's representations that he could do so and continue to receive full lifetime benefits. (Compl. ¶ 12.)

Between 1999 and 2010, both UNUM and Mass Mutual paid Plaintiff full disability benefits under their respective policies. (Compl. ¶ 13.) Each year, Mass Mutual would provide Plaintiff with a Disability Progress Report with Attending Physician's Statement form, which would ask Plaintiff to indicate whether he worked in "any occupation" during that year, and if so, to provide a statement of monthly earnings. (Compl. ¶ 13.) Plaintiff truthfully reported to Mass Mutual that he was providing part-time medical consulting services, and informed Mass Mutual of the income he received. (Compl. ¶ 13.) Mass Mutual, however, never advised Plaintiff that his part-time consulting work would deprive him of

FINDINGS AND RECOMMENDATION     5

full monthly lifetime benefits under the Conn Mutual Policies after age sixty-five.  (Compl. ¶ 13.)

On October 11, 2010, Plaintiff turned sixty-five years old and his disability had not improved.  (Compl. ¶ 14.)  The UNUM Policy continues to pay Plaintiff fully monthly benefits.  (Compl. ¶ 14.) On or about October 19, 2010, Plaintiff made a claim to Mass Mutual to continue full monthly benefits under the Conn Mutual Policies' Lifetime Disability Benefits Rider, which took effect on October 11, 2010.  (Compl. ¶ 15.)  However, in or around March 10, 2011, Mass Mutual advised him that they would not continue to pay full benefits after age sixty-five.  (Compl. ¶ 15.)

According to Mass Mutual, although Plaintiff was totally disabled under the Conn Mutual Policies and entitled to full benefits prior to age sixty-five under the Own Occupation/ Presumptive Total Disability Rider and the definition of "total disability" provided therein, he was not "totally disabled" for that same time period under a separate definition of "total disability" provided for in the Lifetime Total Disability Benefits Rider.  (Compl. ¶ 15.)  Mass Mutual claimed it was permissible for Plaintiff to do part-time consulting work and receive full benefits under the Own Occupation/Presumptive Total Disability Rider, but that same part-time consulting work deprived him of ninety percent of those monthly benefits after age sixty-five under the Lifetime Total Disability Benefits Rider.  (Compl. ¶ 15.)  As a result, Plaintiff's benefits were reduced from $9,300 per month to $860 per month for the remainder of his lifetime.  (Compl. ¶ 15.)  Mass Mutual also informed Plaintiff that he would lose the reduced

FINDINGS AND RECOMMENDATION     6

1  benefits if he performed any work in any occupation after age
2  sixty-five. (Compl. ¶ 15.)

3      Prior to this time, Plaintiff had never been informed by
4  anyone that he would not be entitled to full monthly benefit
5  payments after age sixty-five under the Conn Mutual Policies based
6  upon part-time consulting work he performed before age sixty-five
7  outside his "own occupation." (Compl. ¶ 15.) Plaintiff disputes
8  Mass Mutual's interpretation of the Conn Mutual Policies, and
9  contends that he is entitled to the same full monthly benefit
10 payments for the remainder of his life as he was afforded prior to
11 age sixty-five. (Compl. ¶ 16.)

12 **II.   Procedural Background**

13      Plaintiff originally filed this action against defendants Mass
14 Mutual and Miller (collectively, "Defendants") on July 7, 2011.
15 (Notice of Removal Ex. 1 at 1.) Plaintiff served Mass Mutual with
16 the Summons and Complaint on July 20, 2011. (Notice of Removal at
17 2.) Miller was also served on July 20, 2011. (*Id.*)

18      On August 19, 2011, with Miller's consent[3], Mass Mutual
19 removed Plaintiff's lawsuit to this court.[4] (*Id.* at 2-3.) Mass

20

21      [3] *See Lapides v. Bd. of Regents of the Univ. Sys. of Georgia,*
22 535 U.S. 613, 122 S. Ct. 1640, 1644 (2002) (noting that "removal
   requires the consent of all defendants.")

23
24      [4] Removal was timely under 28 U.S.C. § 1446(b), which
   provides, in pertinent part, that:

25      The notice of removal of a civil action or proceeding
26      shall be filed within thirty days after the receipt by
        the defendant, through service or otherwise, of a copy of
27      the initial pleading setting forth the claim for relief
        upon which such action or proceeding is based, or within
28      thirty days after the service of summons upon the

FINDINGS AND RECOMMENDATION      7

Mutual states that "removal is proper because this court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441." (*Id.* at 3.)  Mass Mutual contends that there is complete diversity of citizenship between Plaintiff and Defendants, and the amount-in-controversy requirement is satisfied. (*Id.*)  As to the amount-in-controversy requirement, Mass Mutual points out that Plaintiff has prayed for no less than $650,000 in economic and non-economic damages. (*Id.*)

In regards to the complete diversity requirement, Mass Mutual's Notice of Removal indicates that Plaintiff is an individual who resides in Lutherville, Maryland. (*Id.*) "Plaintiff is domiciled in Maryland and, therefore, is a citizen of Maryland" for diversity purposes. (*Id.*)  Mass Mutual is a corporation with its principal place of business located in Springfield, Massachusetts. (*Id.*)  "Mass Mutual, therefore, is a citizen of Massachusetts." (*Id.*)  Miller, on the other hand, is a resident of Portland, Oregon. (*Id.*) "Counsel for Mr. Miller confirmed that Mr. Miller is domiciled in Oregon; therefore, Mr. Miller is a citizen of Oregon for purposes of diversity jurisdiction." (*Id.*)

One week after removing this action, on August 26, 2011, Mass Mutual filed a motion to dismiss for failure to state a claim. (Doc. #5.)  However, on August 30, 2011, the parties agreed to stay the briefing on the motion to dismiss (doc. # 7) because, on that same day, Plaintiff filed the instant motion to remand. (Doc. #8.)

defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b) (2006).

FINDINGS AND RECOMMENDATION      8

**Legal Standard**

Remand is governed by 28 U.S.C. § 1447(c), which provides, in pertinent part, that:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

28 U.S.C. § 1447(c) (2006).

Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir.2003) ("Any civil action may be removed to federal district court so long as original jurisdiction would lie in the court to which the case is removed"). Furthermore, "[a]ny civil action of which the district courts have [federal question jurisdiction] shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b).

"The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.), Inc.*, 167 F.3d 1261, 1265 (9th Cir.1999), *overruled on other grounds, Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676 (9th Cir.2006). Additionally, the defendant has the burden of showing that it has complied with the procedural requirements for

FINDINGS AND RECOMMENDATION      9

1  removal. *Schwartz v. FHP Int'l Corp.*, 947 F. Supp. 1354, 1360 (D.
2  Ariz. 1996).

3                          **Discussion**

4  **I.    Plaintiff's Motion to Remand**

5       In this case, the question of whether removal was proper
6  hinges on whether Miller was fraudulently joined as a defendant,
7  the issue to which this court now turns.

8       **A.    Fraudulent Joinder Generally**

9       Mass Mutual removed this action pursuant to 28 U.S.C. § 1332.
10 Under 28 U.S.C. § 1441(b), removal on the basis of diversity
11 jurisdiction can occur "only if none of the parties in interest
12 properly joined and served as defendants is a citizen of the State
13 in which such action is brought."   28 U.S.C. 1441(b) (2006).
14 Plaintiff claims removal was improper because Miller is a resident
15 of Oregon, which violates of the forum defendant rule.  Apparently,
16 "Counsel for [Plaintiff] advised Mass Mutual that its removal
17 violated the plain terms of 28 U.S.C. § 1441(b), but Mass Mutual []
18 refused to agree to remand of this case to Multnomah County Circuit
19 Court, necessitating [Plaintiff]'s motion to remand."  (Mem. Supp.
20 Mot. Remand ("Pl.'s Mem. Supp.") at 4.)

21      Although Mass Mutual does not dispute that Miller is a citizen
22 of Oregon and therefore a forum defendant within the meaning of §
23 1441(b), it argues that the forum defendant rule is inapplicable
24 because Miller is not a "properly joined" defendant. (Def.'s Resp.
25 Opp'n Pl.'s Mot. Remand ("Def.'s Resp. Opp'n") at 9.) As noted by
26 Mass Mutual, the Ninth Circuit has made clear that "the presence of
27 a sham or nominal party" may not "defeat removal on diversity
28 grounds," *Strotek Corp. v. Air Transp. Ass'n of Am.,* 300 F.3d 1129,

FINDINGS AND RECOMMENDATION     10

1132 (9th Cir. 2002), because "[t]he complete diversity requirement
of the forum defendant rule . . . does not apply in instances where
a defendant is fraudulently joined to an action." *Soanes v.
Carolina Cas. Inc. Co.,* No. CV 10-46-BU-RWA, 2010 WL 5607045, at *2
(D. Mont. Nov. 10, 2010)

It is well settled law that when, as here, a party moves for
remand challenging the federal court's removal jurisdiction,
"district courts typically apply the doctrine of fraudulent
joinder[.]" *Sizer v. New England Fin.,* No. CV10-553-PK, 2010 WL
5101531, at *4 (D. Or. Sept. 22, 2010). "[T]he central question in
this analysis is whether the plaintiffs fail to state a cause of
action against a resident defendant under state law." *Id.* The
removing party carries the burden of proving that joinder of a non-
diverse party is fraudulent. *Snyder v. Davol, Inc.,* No. CV 07-
1081-ST, 2008 WL 113902, at *4 (D. Or. Jan. 7, 2008).

**B.   Whether Plaintiff has Failed to State a Cause of
       Action Against Miller**

In his complaint, Plaintiff sets forth the following claims
against Miller: breach of contract, negligence, and negligent
misrepresentation. (Compl. at 14-20.) Mass Mutual claims that all
of Plaintiff's claims are barred by the applicable statute of
limitations or statute of repose. *See Ritchey v. Upjohn Drug Co.*,
139 F.3d 1313, 1320 (9th Cir. 1998) (finding defendants, who were
citizens of the forum state of California, to be "sham defendants"
under the fraudulent joinder doctrine because the statute of
limitations barred a claim against them).

///

///

FINDINGS AND RECOMMENDATION     11

### 1.   Plaintiff's Claim for Breach of Contract

Plaintiff alleges that he "contracted with Miller to procure . . . disability insurance policies that would provide him with 'own occupation' insurance coverage that would pay benefits for his lifetime if he were unable to continue working as a cardiothoracic surgeon, but would allow him to continue working in another occupation or profession." (Compl. ¶ 51.)  Miller agreed and procured Conn Mutual Policies for Plaintiff, and Plaintiff agreed to purchase them.  (Compl. ¶ 52.)  Plaintiff therefore claims that Miller breached his contract with Plaintiff to purchase the agreed-upon insurance because Conn Mutual Policies are no longer paying him full monthly benefit payments. (Compl. ¶¶ 53-54.)

Mass Mutual claims that Plaintiff's breach of contract claim against Miller is barred by the six-year statute of limitations under Oregon law.  Mass Mutual argues that the alleged breach occurred when Miller procured Conn Mutual policies for Plaintiff with terms of coverage different that what he allegedly agreed to procure.  "Thus, the limitations period on the purported contract claim began to run more than twenty years ago when Mr. Miller procured the alleged non-conforming [Conn Mutual] Policies." (Def.'s Resp. Opp'n at 10.)

Plaintiff counters by arguing that Miller did not breach the contract to procure insurance until Mass Mutual denied payment of benefits in October 2010, "i.e., when the policy procured by Miller failed to pay the benefits that were contractually required." (Reply Supp. Pl.'s Mot. Remand ("Pl's Reply") at 8-9.)  Plaintiff points out that he contracted with Miller to procure disability

insurance policies that would provide him with lifetime "'own occupation' insurance coverage *that would pay benefits* for his lifetime if he were unable to continue working as a cardiothoracic surgeon, but would allow him to continue working in another occupation or profession." (*Id.*) Plaintiff thus claims that "MassMutual's contention that the statute of limitations lapsed in 1992 cannot withstand scrutiny because at that time it was unknowable whether [Plaintiff] would ever have need for the disability policy benefits-- much less whether MassMutual would pay them." (*Id.*)

ORS 12.080(1) provides, in pertinent part, that "[a]n action upon a contract . . . shall be commenced within six years." *See also Waxman v. Waxman & Assocs., Inc.,* 224 Or. App. 499, 512 (2008) (stating that "the applicable statute of limitations for [] contract claims, is without a discovery rule, six years from the date of the breach.")[5] The six-year "statute of limitations runs from the date of the breach, not the date of contract" and it "may be tolled in certain cases, *e.g.,* those involving fraudulent concealment of the breach." *Id.* (emphasis added).[6]

"[A]n agreement by an insurance agent or broker to procure an insurance policy for an applicant is a contract and may give rise

---

[5] A discovery rule typically allows a plaintiff to bring an action within a set time period "from the date the injury or damage is first discovered or in the exercise of reasonable care should have been discovered." *Id*. at 511 (quoting ORS 12.135(2)).

[6] Plaintiff has not presented any arguments concerning the fraudulent concealment exception and/or the tolling of the statute of limitations. Rather, Plaintiff focuses his arguments solely upon when the alleged breach took place based on controlling precedent.

1  to an action for breach of contract in the event that the broker
2  violates any duty imposed upon him by that contract." *Warnock v.*
3  *Bonneville Gen. Agency, Inc.,* 271 Or. 634, 638 (1975).  The usual
4  action on a contract is distinguishable from an action against an
5  agent on a contract to procure insurance because the plaintiff-
6  clients have "the right to rely upon a presumed obedience to their
7  instructions on the part of their skilled agent[.]" *Franklin v. W.*
8  *Pac. Ins. Co.,* 243 Or. 448, 453 (1966) (citation and internal
9  alterations omitted).

10      Here, the resolution of the parties' dispute turns on when the
11  six-year statute of limitations began to run.  In *Pritchard v.*
12  *Regence Bluecross Blueshield of Or.,* 225 Or. App. 455 (2009)*,* the
13  court stated that "[a] claim for breach of contract accrues when
14  the contract is breached[,]" *id.* at 458, while *Franklin* made clear
15  that "an agent is in breach of his contract to procure if he
16  secures insurance with different terms or coverage than that which
17  he agreed to secure."  *Franklin*, 243 Or. App. at 450.  Taken
18  together, *Pritchard* and *Franklin* suggest that Miller was in breach
19  of contract, at the latest, on October 14, 1988, when he secured
20  the final Conn Mutual policy which differed in coverage from that
21  which Plaintiff requested.  This conclusion is supported the fact
22  that breach of contract claims do not benefit from the discovery
23  rule with respect to the statute of limitations in Oregon.  *Waxman*,
24  224 Or. App. at 511.

25      Moreover, in *Tolbert v. Conn. Gen. Life Ins. Co.,* 257 Conn.
26  118, 778 A.2d 1 (2001), the Connecticut Supreme Court reached a
27  similar conclusion with respect to analogous state-law.  There, in
28  September 1975, the plaintiff and Hartford Federal Savings and Loan

FINDINGS AND RECOMMENDATION      14

1  Association ("Hartford"), who was Fleet National Bank's ("Fleet")
2  predecessor in interest, entered into an agreement whereby Hartford
3  was to procure mortgage disability insurance for plaintiff. *Id.* at
4  119-20.   Hartford secured a disability policy with Connecticut
5  General Life Insurance Company ("Conn General") effective October
6  6, 1975.  *Id.* at 120.  In 1979, when plaintiff became totally
7  disabled, Conn General began paying disability benefits on the
8  plaintiff's behalf in the form of monthly mortgage payments on her
9  property.  *Id.*  However, in September 1990, Conn General stopped
10 paying benefits and the plaintiff's mortgage account became
11 delinquent.  *Id.* at 121.  Eventually the plaintiff commenced an
12 action against Conn General and Fleet in 1994.  *Id.*

13      On appeal, the plaintiff claimed that her breach of contract
14 claim against Fleet was not barred by the applicable six-year
15 statute of limitations.  *Id.* at 123.  Specifically, the plaintiff
16 claimed that, "although she entered into a contract with Fleet's
17 predecessor in interest . . . in September, 1975, because she was
18 not aware that Hartford [] had beached its contract with her until
19 September, 1990, when her mortgage disability insurance benefits
20 were wrongly terminated . .  the statute of limitations did not
21 begin to run until that time."  *Id.*  Fleet, on the other hand,
22 argued that the breach occurred in September 1975, when Hartford
23 allegedly failed to procure adequate disability insurance.  *Id.*
24 *Tolbert* ruled in Fleet's flavor providing, in pertinent part, that:

25          The procurement of inadequate insurance, which
            constituted the alleged breach of the contract, would
26          have resulted in legal damage as soon as it occurred.
            Indeed, the injury allegedly caused by Hartford Federal
27          had to have been inflicted at the time Hartford Federal
            procured a mortgage disability policy for the plaintiff
28

FINDINGS AND RECOMMENDATION     15

in September, 1975, because that policy was either adequate or inadequate *at that time*.

*Id.* at 125 (emphasis in the original).  *Tolbert* acknowledged that "the application of this rule may result in occasional hardship," however, "*ignorance of the fact that damage was done does not prevent the running of the statute*" of limitations.  *Id.* (emphasis in the original).[7]

Based on the analysis in *Tolbert*, I conclude that, if the contract was breached, it was breached when the alleged procurement of inadequate insurance occurred.  Accordingly, the six-year statute of limitations on Plaintiff's breach of contract claim had clearly run long before the current complaint was filed on July 7, 2011.

### 2.   Plaintiff's Tort Claims

In his sixth claim for relief for negligence, Plaintiff claims Miller had superior expertise and experience in insurance and owed him a duty of reasonable care in procuring disability insurance policies consistent with his instructions.  (Compl. ¶ 56.) Plaintiff further alleges that Miller was negligent and breached his duty of care by failing: (i) to properly evaluate the Conn Mutual Policies; (ii) to adequately inform Plaintiff of the nature of the disability coverage provided for by the Conn Mutual Policies; (iii) to warn Plaintiff that the Conn Mutual Policies did not afford full lifetime "own occupation" coverage and benefits if Plaintiff performed any non-cardiothoracic surgical work before age

---

[7] In *Tolbert*, the plaintiff had not alleged that Fleet, or its predecessor in interest, Hartford, fraudulently concealed facts or information from her which would have tolled the statute of limitations under Connecticut law as well.  *Id.* at 125 n.8.

sixty-five; (iv) to take adequate precautions to procure disability insurance with the terms and coverages Plaintiff had been led to expect would be included in the policies; and (v) to warn Plaintiff at any point that under the Conn Mutual Policies any work he performed outside his "own occupation" before age sixty-five would deprive him of full monthly benefit payments. (Compl. ¶ 57.)

In his seventh claim for relief for negligent misrepresentation, Plaintiff alleges that Miller negligently misrepresented the fact: (i) that Conn Mutual Policies afforded Plaintiff the same lifetime coverage as the UNUM Policy; and (ii) that Conn Mutual Policies would pay full monthly benefit payments, even if he continued working in another job or profession. (Compl. ¶ 62.) Plaintiff claims that he justifiably relied upon Miller's negligent representations. (Compl. ¶ 63.)

Relying on ORS 12.115(1), Mass Mutual contends that Plaintiff's sixth and seventh claims are barred by Oregon's statute of repose because the alleged acts or omissions by Miller occurred more than ten years before the complaint was filed.[8] (Def.'s Resp. Opp'n at 12.) According to Mass Mutual, the alleged initial negligent act or omission occurred in the mid-1980s when Miller procured the Conn Mutual Policies, which, as described by Plaintiff, do not provide lifetime own occupation. Alternatively,

---

[8] ORS 12.115 provides: "In no event shall any action for negligent *injury to person or property* of another be commenced more than 10 years from the date of the act or omission complained of." (emphasis added).

FINDINGS AND RECOMMENDATION    17

Defendant claims that Plaintiff's tort claims are barred by Oregon's two-year statute of limitations, ORS 12.110.[9]

Although neither party cited *DeJonge v. Mutual of Enumclaw*, 90 Or. App. 533, 752 P.2d 1277 (1988), *rev. den.* 306 Or. 155, 758 P.2d 346 (1988), I find it dispositive on this matter. There, in 1980, the plaintiffs employed Keesecker Insurance ("Keesecker") "to obtain 'all the insurance necessary' for their business." *Id.* at 535. Keesecker obtained insurance from Mutual of Enumclaw ("Mutual"). *Id.* In 1983, a minor purchased alcoholic beverages from plaintiffs' grocery store and was involved in an accident, which later resulted in the filing of a wrongful death action. *Id.* Before being deposed in that proceeding, plaintiffs retained an attorney who contacted Keesecker on January 17, 1984, inquiring what its position was regarding defense of the wrongful death action, should they be added as defendants. *Id.* at 535-36. Plaintiffs' attorney was notified by Mutual that no coverage existed, due to an alcohol exclusion in the policy. *Id.* at 536. Plaintiffs believed that Keesecker was at fault for not providing the coverage requested and, on June 6, 1986, plaintiffs filed suit alleging "that Keesecker negligently failed to procure adequate insurance, because it failed to include coverage for liquor liability." *Id. DeJonge* held that:

> [P]laintiffs were aware that Keesecker had not procured the insurance which they had requested and that, as a

---

[9] ORS 12.110(1) provides, in pertinent part, that, "[a]n action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract . . . shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

result, they hired an attorney to protect their interests. That decision was in the light of Keesecker's alleged negligence. It was at that time that their damage occurred. **The statute began to run no later than January, 1984, when they had notice that the insurance procured by Keesecker was inadequate to cover liquor liability and they retained the first attorney. This action was not filed until June 6, 1986, which was beyond the two year limitation period for filing a negligence action. ORS 12.110(1).**

*Id.* at 537 (emphasis added).

In this case, as in *DeJonge*, the plaintiff-insured's claim was predicated upon the failure to procure adequate insurance. On or about October 19, 2010, Plaintiff made a claim requesting Mass Mutual to continue full monthly benefits under the Conn Mutual Policies. (Compl. ¶ 15.) However, in or around March 10, 2011, Mass Mutual advised him that they would not continue to pay full benefits after age sixty-five. (Compl. ¶ 15.) Thus, as in *DeJonge*, I find that the statute began to run on or about March 10, 2011, when Plaintiff had notice that the insurance procured by Miller was inadequate to provide lifetime "own occupation" insurance coverage identical to that of the UNUM Policy. Because Plaintiff brought this action within the time required by the statute, his negligence claim is not barred.[10]

In short, to quote *Knutson v. Allis-Chalmers Corp.,* 359 F. Supp. 2d 983 (D. Nev. 2005), "[i]n order to establish that there has been no fraudulent joinder, a plaintiff need only have one potentially valid claim against a [resident] defendant." *Id.* at 993 (collecting cases). Plaintiff's negligence claim against

---

[10] Based on a two-year limitation, Plaintiff had until March 10, 2013 to file his negligence claim against Miller. This action was filed on July 7, 2011.

FINDINGS AND RECOMMENDATION     19

1  Miller is potentially valid, therefore, Miller's presence destroys
2  diversity and this court does not have original jurisdiction under
3  28 U.S.C. § 1332.

4  **II.  Attorney's Fees Under 28 U.S.C. § 1447(c)**

5     "An order remanding the case may require payment of costs and
6  any actual expenses, including attorneys fees, incurred as a result
7  of the removal." 28 U.S.C. § 1447(c) (2007). In *Martin v. Franklin*
8  *Capital Corp.,* 546 U.S. 132, 126 S. Ct. 704 (2005), the Supreme
9  Court resolved a conflict among Circuits concerning when attorney's
10  fees should be awarded under § 1447(c). *Id.* at 136.  The Court
11  stated, "[a]bsent unusual circumstances, courts may award
12  attorney's fees under § 1447(c) only where the removing party
13  lacked an objectively reasonable basis for seeking removal." *Id.*
14  at 141.  The obvious implication is that "when an objectively
15  reasonable basis exists, fees should be denied." *Id.*

16     The Ninth Circuit has clearly indicated that "removal is not
17  objectively unreasonable solely because the removing party's
18  arguments lack merit, or else attorney's fees would always be
19  awarded whenever remand is granted." *Lussier v. Dollar Tree*
20  *Stores, Inc.,* 518 F.3d 1062, 1065 (9th Cir. 2008).  In fact,
21  "*Martin* explicitly rejected the view that attorney's fees should
22  presumptively, or automatically, be awarded on remand." *Id.*

23     Here, I recommend denying Plaintiff's request for attorney's
24  fees.  Oregon's case law concerning agents and the alleged failure
25  to procure adequate insurance was not particularly abundant, nor
26  did it clearly foreclose Miller's statute of limitations defense to
27  all claims. *County of Hawai'i v. Univev, LLC,* 2010 WL 520696, at
28  *26 (D. Haw. Feb. 11, 2010) (awarding fees under § 1447(c) based,

FINDINGS AND RECOMMENDATION      20

in part, on Hawai'i case law clearly foreclosing the possibility that the defendant could be liable for the alleged tortious conduct). Each party's arguments were well taken and I cannot say that it was "obvious according to the settled rules of [Oregon]," *Gardner v. UICI,* 508 F.3d 559, 562 (9th Cir. 2007), whether Plaintiff's claims against Miller were barred.

## Conclusion

For the foregoing reasons, Plaintiff's motion [8] to remand this proceeding to Multnomah County Circuit Court should be GRANTED. Plaintiff's request for attorney's fees and costs under 28 U.S.C. § 1447(c) should be DENIED.

## Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due February 1, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due February 20, 2012. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 13th day of January, 2012.

/s/ Dennis J. Hubel

_____
Dennis James Hubel
United States Magistrate Judge

FINDINGS AND RECOMMENDATION      21